JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Katie J. Alvarez Gomez

**DEFENDANTS**

NCP Finance Limited Partnership, and TitleMax of Texas, Inc.

**(b)** County of Residence of First Listed Plaintiff    Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Ohio
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kellett & Bartholow, PLLC, 11300 N. Central Expy, Suite 301, Dallas, Texas 75243 Tele: 214-696-9000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [x] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
11 USC 362, Tex. Fin. Code Ann. §§ 391.001 et seq. (Texas Debt Collection Act)

Brief description of cause:
Defendants repossessed Plaintiff's vehicle during her Chapter 13 bankruptcy case in violation of the stay.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE      DOCKET NUMBER

DATE
July 7, 2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Claude D. Smith

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

KELLETT BARTHOLOW PLLC
Theodore O. Bartholow
TX Bar No. 24062602
Karen L. Kellett
TX Bar No. 11199520
Claude D. Smith
TX Bar No. 24028778
11300 N. Central Expwy. Suite 301
Dallas, TX 75243
Tel. 214.696.9000
Fax 214.696.9001
thad@kblawtx.com

COUNSEL FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **KATIE J. ALVAREZ GOMEZ,** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **CASE NO. 3:23-CV-01524** |
| | § | |
| **NCP FINANCE LIMITED** | § | |
| **PARTNERSHIP AND TITLEMAX OF** | § | |
| **TEXAS, INC., D/B/A TITLEMAX,** | § | **JURY DEMAND** |
| | § | |
| **DEFENDANTS** | § | |

## <u>ORIGINAL COMPLAINT</u>

TO THE HONORABLE UNITED STATES JUDGE:

Katie J. Alvarez Gomez ("Plaintiff") files this adversary complaint against Defendants NCP Finance Limited Partnership ("NCP") and TitleMax of Texas, Inc. d/b/a TitleMax ("TitleMax") (collectively, "Defendants") seeking actual damages, punitive damages, and reasonable attorneys' fees and expenses of this litigation pursuant to 11 U.S.C. §§ 105(a), 362(a)(1), (3-6), and 362(k), the Texas Debt Collection Act ("TDCA") (Tex. Fin. Code Ann. §§ 391.001 *et seq*.), and for gross negligence based on Defendants' unlawful repossession and sale of Plaintiff's vehicle in violation of the automatic stay and other applicable laws.

---

**ORIGINAL COMPLAINT**                                                                 **Page 1**

## I.  INTRODUCTION

1.      In March of 2022, Plaintiff obtained a loan from Defendants and pledged the title of her vehicle as collateral.

2.      Plaintiff experienced financial difficulties in the summer of 2022, which led her to file a Chapter 13 bankruptcy case in August of 2022.

3.      After filing her petition for bankruptcy protection, Defendants repossessed Plaintiff's vehicle in violation of the automatic stay, after Defendants had received multiple notices of the Plaintiff's bankruptcy filing.  Plaintiff, both directly and through her bankruptcy counsel, made multiple demands on the Defendants to return her vehicle, but the Defendants refused.

4.      Shockingly, after Plaintiff's repeated demands for return of the vehicle and after telling Plaintiff that a planned sale of the vehicle was placed on "hold," Defendants sold Plaintiff's vehicle on October 19, 2022, leaving an alleged deficiency balance.  As a result, Plaintiff and her husband have been deprived of the use of that vehicle, which has resulted in actual damages and has caused the Plaintiff and her husband to suffer emotional distress.

5.      In addition, Defendants' actions in taking the vehicle caused Plaintiff to default on her Chapter 13 plan payments, which resulted in her case getting dismissed.  Plaintiff remains without the use of this vehicle, which has caused extreme financial hardship for Plaintiff and her husband.

## II.  JURISDICTION AND VENUE

6.      This matter is related to *In re Katie Alvarez-Gomez*, Case No. 22-41795-elm13 (the "Chapter 13 Case"), as well as *In re Katie Alvarez-Gomez*, 23-30340-sgj7 (the "Chapter 7 Case"), both filed in the United States Bankruptcy Court for the Northern District of Texas.

7.      This Court has jurisdiction over this action proceeding pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The Court also has jurisdiction over the state law claims in the action pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction under 28 U.S.C. § 1334 because Plaintiff's Chapter 13 and 7 bankruptcy cases were filed in this district, and because Plaintiff asserts claims and seeks relief under the United States Bankruptcy Code, including violation of automatic stay under 11 U.S.C. § 362.

8.      Jurisdiction over bankruptcy matters is vested within the District Court, and the bankruptcy courts are authorized to administer bankruptcy cases under the District Court's jurisdiction pursuant to the District Court's standing order of reference entered on August 3 1984. *See also Northern Pipeline Construction Company v. Marathon Pipeline Company*, 458 U.S. 50 (1982).  Because this matter seeks to redress Plaintiff's damages under the Bankruptcy Code pursuant to this Court's original subject matter jurisdiction over bankruptcy matters, venue is proper because this is the District where Plaintiff's Chapter 13 bankruptcy case was pending when Defendants violated the Bankruptcy Code as to Plaintiff's property.  In the interest of efficiency and preserving judicial resources, Plaintiff has brought all of her claims in this single action, including claims that could be separately litigated before the bankruptcy court that administered Plaintiff's Chapter 13/7 cases, as the bankruptcy and non-bankruptcy claims share the same nucleus of operative facts and are therefore appropriately brought in a single proceeding in this Court.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiff's Chapter 13/7 bankruptcy cases were filed in this district.  Defendants wrongfully violated the automatic stay in this district, and Defendants regularly transact business in this district.

### III. **PARTIES**

10.    Plaintiff, Katie J. Alvarez Gomez, was the debtor in the Chapter 7 Bankruptcy Case and the Chapter 13 Bankruptcy Case.

11.    NCP Finance Limited Partnership is a foreign (Ohio) for-profit corporation with its principal place of business located in Dayton, Ohio.  NCP can be served with process by serving its agent for service of process, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

12.    TitleMax of Texas, Inc. is a foreign (Delaware) for-profit corporation with its principal place of business located in Savannah, Georgia.  TitleMax can be served with process by serving its agent for service of process, Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

### IV. **FACTUAL ALLEGATIONS**

13.    Plaintiff and her husband, Juan Carlos Villanueva, acquired a 1997 Ford F350 (the "Work Truck") in 2017.  Until the recent, unlawful sale of the Work Truck by Defendants, the Work Truck was at all relevant times titled in Ms. Gomez's name.

14.    Mr. Villanueva, who is a tape-and-bed drywall contractor, used the Work Truck to haul large quantities of drywall, 12-foot stilts, scaffolding, corner bead, drywall "mud" and other materials between construction sites and from the supply shop, primarily at the beginning of a job when first getting materials on site.[1]

15.    Although Mr. Villanueva has a separate, smaller truck as his main vehicle—a 2013 Ford F150 identified in the Schedules and also titled in the name of Ms. Gomez—the Ford

---

[1] The mud used by tape-and-bed contractors comes in quantities weighing several hundred pounds in the amounts necessary for Mr. Villanueva's jobs.

**ORIGINAL COMPLAINT**                                                                                     **Page 4**

F150 does not have the payload capacity of the Work Truck. As such, it is much more efficient and considerably less expensive for Mr. Villanueva to use the Work Truck to transport all of the necessary building materials to job sites. This is especially true given the current price of fuel, as well as the fact that the primary supply store is approximately one-half hour away from Ms. Gomez's and Mr. Villanueva's home, with an additional distance to the job site, sometimes up to one hour away.

16.     Mr. Villanueva is an independent contractor, and therefore he bears his own expenses in connection with each job he takes.

17.     When Ms. Gomez and her husband first acquired the Work Truck, the transmission was in poor shape, and Mr. Villanueva rebuilt the entire transmission on his own.

18.     In addition, approximately two weeks before the repossession, described below, Mr. Villanueva replaced the batteries in the Work Truck, at an approximate cost of $200 for two batteries.

19.     Based on financial difficulties which have been chronicled in this bankruptcy case, Ms. Gomez obtained a title loan from TitleMax on or about March 16, 2022, using the title to the Work Truck as collateral.

20.     A true and correct copy of page one the loan through TitleMax is attached hereto as **Exhibit A** (the "Loan Agreement").[2]

21.     Although Ms. Gomez obtained the loan through a TitleMax office, the name of the lender on the loan documentation is NCP Finance Limited Partnership.

22.     TitleMax of Texas, Inc. is, on information and belief, the servicer of Plaintiff's

---

[2] Ms. Gomez was unable to access the loan documents electronically through the TitleMax app, because TitleMax has apparently frozen her access to the documents. Ms. Gomez did have a partial copy of the first page of the Loan Agreement saved as a pdf, however, which is attached here.

**ORIGINAL COMPLAINT**                                                                                              **Page 5**

loan.[3]

23.    Under the basic terms of the loan, NCP agreed to lend Ms. Gomez $2,181.95 in exchange for a total payment due of $2,529.53, due on April 15, 2022.  As a result, the finance charge was $347.58, which represents an annual percentage rate of 193.81%.

24.    In exchange for this loan, Ms. Gomez granted a security interest in the Work Truck, and delivered the original title to the vehicle to TitleMax in connection with same.

25.    Based on financial hardships, Ms. Gomez was not able to make the $2,529.53 payment to NCP on April 15, 2022.

26.    Prior to filing her Chapter 13 case, on August 5, 2022, Ms. Gomez spoke to TitleMax over the phone, and agreed to pay $500 as a partial cure payment under the Loan. TitleMax accepted the payment, and in fact, TitleMax charged her account that same day, despite the fact that TitleMax had agreed not to charge her account until the next day, Saturday, August 6, 2022.

27.    During the August 5, 2022 call, TitleMax's representative specifically stated that TitleMax would not repossess the Work Truck based on the payment of $500.

28.    On August 28, 2022, Ms. Gomez filed a petition under Chapter 13 of the Bankruptcy Code, initiating the Chapter 13 Case.

29.    The primary reason for the filing of her Chapter 13 bankruptcy case was that Automax, the lender for the Ford F150 identified in the Schedules—a different vehicle than the F350 which is the subject of the instant suit—had unlawfully repossessed that vehicle, despite the fact that Ms. Gomez and her husband were paid current on that vehicle.  Ms. Gomez and her husband subsequently regained possession of that vehicle in connection with Ms. Gomez's

---

[3] TitleMax has represented that it serves as "the Credit Service Organization arranging and servicing" the Loan Agreement on behalf of NCP and has guaranteed the obligations under the Loan Agreement to NCP in the event of non-payment by Plaintiff.  *See* Exhibits D and H, *supra*.

Chapter 13 bankruptcy case.

30.    Ms. Gomez scheduled the Defendants' debt under NCP Finance Limited Partnership, because that was the name of the lender on her loan.

31.    A true and correct copy of Plaintiffs' Schedule D is attached hereto as **Exhibit B**.

32.    Plaintiff claimed the Work Truck as exempt in Schedule C.

33.    A true and correct copy of Plaintiff's Schedule C is included in Exhibit B.

34.    Plaintiff also included the debt associated with the Work Truck as part of her Chapter 13 Plan at ¶ E(2) Secured 1325(a)(9) Claims Paid by the Trustee – No Cram Down.  A true and correct copy of Plaintiff's Chapter 13 Plan is attached hereto as **Exhibit C**.

35.    Shortly after the filing of Chapter 13 Case—on or about September 5, 2022—Ms. Gomez called TitleMax to let them know about her bankruptcy case.  Ms. Gomez and the TitleMax representative discussed whether another payment was due under the Loan Agreement. The TitleMax representative informed her that she should wait for her bankruptcy attorney and TitleMax's bankruptcy departments to communicate with each other before making any further payment on the loan.

36.    On September 13, 2022, Defendants caused the Work Truck to be repossessed without any notice to Ms. Gomez or her counsel.

37.    On that same day—September 13, 2022—Ms. Gomez called TitleMax to ask why it had repossessed the Work Truck, given that (a) Ms. Gomez had an active Chapter 13 case pending, and (b) Defendants had directed her not to make any further payment under the Loan Agreement pending a discussion between Defendants' bankruptcy department and Ms. Gomez's bankruptcy attorney.

38.    On the September 13, 2022 call, TitleMax's representative informed Ms. Gomez

that her department had not heard back from TitleMax's bankruptcy department, so they authorized the repossession because Ms. Gomez had not yet paid the amount due.

39.    The TitleMax representative also stated that there was no bankruptcy notification on her TitleMax account, despite the fact that Plaintiff had already provided notice of her bankruptcy case.

40.    Also on the September 13, 2022 call, TitleMax did not agree to return the Work Truck, but stated that they would wait to hear back from their bankruptcy department before taking any further action. During that call, TitleMax did agree, however, to place the disposition of the Work Truck on a temporary "hold" until this matter was resolved.

41.    TitleMax also stated that Ms. Gomez and/or her counsel could contact TitleMax's bankruptcy department directly. TitleMax provided only a fax number and email address for its bankruptcy department; no direct telephone number was provided.

42.    By letter dated September 14, 2022, TitleMax informed Ms. Gomez that they intended to sell the Work Truck by "private disposition" sometime after September 29, 2022.

43.    A true and correct copy of the September 14, 2022 TitleMax Letter is attached hereto as **Exhibit D**.

44.    The September 14, 2022 TitleMax Letter also states the following:

You can get the Collateral back at any time before we sell it, if permissible, by paying us the full amount you owe (not just the past due payments), including our expenses, which is:

| | |
|---|---|
| Principal: | $2,181.95 |
| Charges: | $36.29 |
| Expenses: | $443.83 |
| **Total**: | $2,662.07 |

45.    The September 14, 2022 TitleMax Letter also appears to provide a bankruptcy disclaimer notice at the bottom of page one, but is clearly prompting Ms. Gomez to pay a certain

amount in exchange for return of the Work Truck.  *Id*.

46.    On September 19, 2022, the bankruptcy firm representing Ms. Gomez in the Chapter 13 Case emailed the bankruptcy department of TitleMax providing an electronic copy of the Notice of Bankruptcy Filing for Ms. Gomez's Chapter 13 Case and demanding return of the Work Truck.

47.    A true and correct copy of the September 19, 2022 email from the bankruptcy firm representing Ms. Gomez to TitleMax's bankruptcy department is attached hereto as **Exhibit E**.

48.    As stated in the September 19, 2022 email, it was Ms. Gomez's intention to keep the Work Truck.

49.    Ms. Gomez's bankruptcy counsel did not receive, and never received, a response to their September 19, 2022 email, other than a form email auto-response stating that "your email has been received and will be processed as soon as possible."  In addition, the auto-response email from TitleMax's bankruptcy department stated that "[s]ending multiple emails regarding the same issue will only result in a delayed response."

50.    A true and correct copy of the form response from TitleMax's bankruptcy department is attached hereto as **Exhibit F**.

51.    Ms. Gomez's bankruptcy firm again emailed Defendants' bankruptcy department on September 27, 2022.

52.    A true and correct copy of the September 27, 2022 email from Ms. Gomez's bankruptcy firm to Defendants' bankruptcy department is attached hereto as **Exhibit G**.

53.    The September 27, 2022 email from Ms. Gomez's bankruptcy firm copied three "team members" from TitleMax's bankruptcy department who had been identified on TitleMax's

auto-response email dated September 19, 2022.[4] *See* Ex. G.

54.    Again, TitleMax failed to respond to the September 27, 2022 email.[5]

55.    Also on September 27, 2022, Ms. Gomez's bankruptcy firm called TitleMax's bankruptcy phone number identified on TitleMax's form email response, but no live TitleMax representative could be reached and no option was provided to leave a message.

56.    All additional attempts by Ms. Gomez and her bankruptcy counsel to effectuate the recovery of the Work Truck were unsuccessful.

57.    Defendants' repossession of and subsequent failure to return the Work Truck violated the automatic stay.

58.    By letter dated October 20, 2022—but received by Plaintiff on October 26, 2022, TitleMax provided Plaintiff with notice that it sold the Work Truck by private sale for $1,400, resulting in an alleged deficiency of $1,357.07.

59.    A true and correct copy of the October 20, 2022 correspondence from TitleMax, entitled "Explanation of Calculation of Surplus or Deficiency" is attached hereto as **Exhibit H**.

60.    The act of selling the Work Truck is a violation of the automatic stay. This violation of the stay is willful, as TitleMax and NCP were fully aware of Plaintiff's bankruptcy

---

[4] The September 19, 2022 auto-response email from TitleMax's bankruptcy department listed the emails of certain team members that could be contacted "for emergencies." *Id.* As stated above, TitleMax had already informed Ms. Gomez directly that the sale of Work Truck was on "hold," and therefore represented that there was not an "emergency."

[5] In a letter dated December 28, 2022—well after the illegal sale of the Work Truck as described below—TitleMax's attorneys admit that TitleMax "received an email" regarding the bankruptcy filing, but TitleMax's counsel attempted to defend Defendants' stay violations by asserting that Plaintiff's loan number in the email was incorrect. It appears that one digit of Plaintiff's eighteen-digit loan number was mistyped, but this does not change the fact that Plaintiff had already put Defendants on notice of Plaintiff's bankruptcy case through the multiple telephone communications between Plaintiff/her counsel and TitleMax as described herein. In addition, TitleMax's "emergency" bankruptcy department never responded at all to the September 19, 2022 and September 27, 2022 emails, whether to notify Plaintiff's counsel that they did not have an account under that number or otherwise. Further, it is clear that TItleMax and NCP do not have policies and procedures in place to run bankruptcy checks on their customers, which would have easily determined that Plaintiff had an active bankruptcy case, and which Defendants could have cross-referenced by the notice of bankruptcy attached to each of the September 19 and September 27, 2022 emails.

and the imposition of the automatic stay at the time they sold the Work Truck.

61.    Further, Defendants never sought to lift the stay in the Chapter 13 Case prior to repossessing and selling the Work Truck.

62.    As a result, Ms. Gomez and her husband have been damaged.

63.    Ms. Gomez's husband has been deprived of his use of the Work Truck, so that he can no longer use it to transport large amounts of materials for his work.

64.    Plaintiff and her husband have therefore suffered actual damages as to the value of the Work Truck, lost profits/income, out-of-pocket expenses, and the opportunity costs of not being able to use the vehicle in the future, including increased cost related to Mr. Villaneuva's work expenses.  Plaintiff has also suffered actual damages of not less than $450 in non-litigation legal fees incurred as a result of her bankruptcy counsel making multiple demands on Defendants for return of the Work Truck.

65.    Furthermore, the Ford F150 which Mr. Villanueva uses on a daily basis suffered transmission issues in the last quarter of 2022, rendering it inoperable.  This caused Mr. Villanueva to be out of work for almost the entirety of November 2022, putting a strain on their finances.  In addition, Plaintiff was unable to take her husband to work during that month, because her 2013 Nissan Juke lost oil pressure, also rendering it inoperable and effectively totaled.  Without the option of a third vehicle, Plaintiff and her husband were without functional transportation, severely limiting their ability to work and putting the feasibility of Plaintiff's Chapter 13 plan at risk.

66.    Indeed, due to Defendants' bad acts—primarily depriving Plaintiff of a vehicle that was critical to Plaintiff's financial stability—Plaintiff was unable to make the payments due under her Chapter 13 case, causing the Chapter 13 Trustee to file a Notice to Intent to Certify

Chapter Dismiss Case. The Court thereafter dismissed Plaintiff's Chapter 13 case without prejudice by order entered on February 16, 2023.

67.    Although Plaintiff's Chapter 13 case was dismissed without prejudice, Plaintiff was unable to refile her Chapter 13 case because she and her husband did not have the income to make the anticipated Chapter 13 plan payments without the use of the repossessed vehicle. This is because Plaintiff and her husband were left with one functional car—the Ford F150. Plaintiff has maintained her job, but her husband is unable to work because he has to care for their young child. Plaintiff and her husband cannot afford daycare for their child without two jobs, but Plaintiff's husband cannot get a job without his own vehicle. He has also been turned down for work because he does not have the means to transport material to jobsites. Because his work locations vary from jobsite to jobsite and are often far away from where they live, Plaintiff is unable to reliably drop her husband off and pick him up from work, while also taking their child to daycare. As such, Plaintiff and her husband are stuck with one income. They cannot afford to purchase even the cheapest of vehicles. This is a spiral which started when Defendants unlawfully repossessed Plaintiff's Work Truck.

68.    Plaintiff filed the Chapter 7 Case in the Northern District of Texas on February 24, 2023.[6] Plaintiff did not receive her discharge in her Chapter 7 Case because she could not afford even the nominal fee to pay for her financial management course.[7]

69.    Ms. Gomez and her husband have suffered anxiety and mental anguish in connection with the repossession of the Work Truck during the pendency of their Chapter 13

---

[6] The purpose of the Chapter 7 case was, in part, to recover the F150, which had been repossessed during this time. Plaintiff was able to recover that vehicle shortly after filing the Chapter 7 case.

[7] Plaintiff scheduled the claim against NCP and TitleMax in her Chapter 7 Schedules and designated these claims as exempt under her Amended Schedule C – Exemptions filed at Ch 7 Dkt No. 21. The Ch. 7 Trustee did not object to this claim for exemption and abandoned these claims. See Chapter 7 Trustee's Report entered on the Chapter 7 Docket on May 25, 2023.

case.  As a result, Ms. Gomez has begun to question the utility of the bankruptcy process, and her trust in the bankruptcy system is in doubt.

70.     Defendants repeatedly flaunted the Bankruptcy Code and Rules by refusing to return the Work Truck, and by making demands for payment, despite the bankruptcy disclaimers included in the limited communications made by Defendants to Plaintiff.

71.     Plaintiff seeks recovery of actual and punitive damages, and attorneys' fees for Defendants' violations of the automatic stay on September 13, 2022 and all dates thereafter. Defendants, after receiving multiple notices of Plaintiff's bankruptcy filing—both oral and written—are in violation of the United States Bankruptcy Code.

## V.  <u>REQUEST FOR RELIEF</u>

### COUNT I
### <u>VIOLATION OF THE AUTOMATIC STAY</u>

72.     The allegations in the paragraphs above are realleged and incorporated herein by this reference.

***Repossession of Plaintiffs' Work Truck Violated the Automatic Stay***

73.     The actions of Defendants in repossessing the Work Truck after receiving notice of Plaintiff's bankruptcy case was a willful violation of the automatic stay as set forth in §§ 362(a)(3) and (6) of the Bankruptcy Code.

74.     Defendants had actual knowledge that Plaintiff was a debtor in a pending Chapter 13 case, and that the automatic stay was in effect.

75.     Defendants' actions were willful.

76.     Defendants' actions caused Plaintiff damages, entitling Plaintiff to actual damages, including costs and attorneys' fees, and punitive damages, as set forth in 11 U.S.C. § 362(k)(1).

*Failure to Return the Work Truck Violated the Automatic Stay*

77.    Defendants' refusal to return the Work Truck despite multiple demands, notices and other communications from Plaintiff and her counsel, are willful violations of the automatic stay as set forth in 11 U.S.C. §§ 362(a)(3) and (6) of the Bankruptcy Code.

78.    Defendants had actual knowledge that Plaintiff was a debtor in a pending Chapter 13 case, and that the automatic stay was in effect.

79.    Defendants' actions were willful.

80.    Defendants' actions caused Plaintiff damages, entitling Plaintiff to actual damages, including costs and attorneys' fees, and punitive damages, as set forth in 11 U.S.C. § 362(k)(1).

*Notice of Sale and Demand for Payment Violated the Automatic Stay*

81.    Defendants' September 14, 2022 notice of private disposition of the Work Truck was a willful violation of 11 U.S.C. §§ 362(a)(3), (4), (5) and (6) in that it indicated Defendants would dispose of the Work Truck in a private sale on or before September 29, 2022 unless Plaintiff paid the amount of her pre-petition debt in full.

82.    Defendants knew that the amounts they were demanding were for debt for pre-petition debt obligations under the Loan Agreement, and thus was a pre-petition claim of Defendants.

83.    Defendants intended to demand payment of its pre-petition debt, and indeed demanded partial and full payment of the pre-petition debt, on at least one occasion.

84.    Defendants had actual knowledge that Plaintiff was a debtor in a pending Chapter 13 case, and that the automatic stay was in effect.

85.    Defendants' actions were willful.

86.    Defendants' actions caused Plaintiff damages, entitling Plaintiff to actual damages, including costs and attorneys' fees, and punitive damages, as set forth in 11 U.S.C. § 362(k)(1).

***Sale of Work Truck Violated the Automatic Stay***

87.    The sale by Defendants of Plaintiff's Work Truck through private disposition on October 20, 2022 is a willful violation of the automatic stay as set forth in 11 U.S.C. §§ 362(a)(3), (4), (5) and (6) of the Bankruptcy Code.

88.    Defendants had actual knowledge that Plaintiff was a debtor in a pending Chapter 13 case, and that the automatic stay was in effect.

89.    Defendants' actions caused Plaintiff damages.

90.    Defendants' actions were willful.

91.    Defendants intended to take the actions they took.  On at least one occasion, Defendants' personnel told Plaintiff that Defendants would not sell the Work Truck.

92.    Upon information and belief, Defendants' conduct as described herein is part of a general pattern and practice by Defendants, which is either expressly authorized by, or not specifically prohibited by, their policies and procedures, or which, if unauthorized or prohibited by such policies and procedures, is conduct that in practice is permitted and/or which policies and procedures are insufficient to ensure against the conduct described herein.

93.    As such, Defendants' actions in selling the Work Truck constitute gross and willful violation of the automatic stay, 11 U.S.C. §§ 362(a)(3), (4), (5) and (6).

94.    Plaintiff is entitled to actual damages, including costs and attorneys' fees, and punitive damages, as set forth in 11 U.S.C. § 362(k)(1).

## COUNT II
## <u>VIOLATION OF THE TEXAS DEBT COLLECTION ACT</u>

95.     The allegations in the paragraphs above are realleged and incorporated herein by this reference.

96.     Plaintiff is a consumer for purposes of the Texas Debt Collection Act ("TDCA") (Tex. Fin. Code Ann. §§ 391.001 *et seq.*)

97.     TitleMax is a debt collector for purposes of the TDCA.

98.     NCP is a debt collector for the purposes of the TDCA.

99.     In addition, because TitleMax's conduct described herein was performed as servicer and thus agent for and on behalf of NCP in connection with the Loan Agreement, NCP is also liable for TitleMax's actions. NCP is also independently liable for the bad acts described in this section to the extent it participated in the servicing decisions and violations of the TDCA described herein.

100.    Defendants have violated § 392.301(a)(7) of the TDCA by threatening that nonpayment of a consumer debt will result in the sale of a person's property without proper court proceedings.

101.    Specifically, after unlawfully repossessing the Work Truck in violation of the automatic stay, Defendants sent Plaintiff a notice saying that it would sell the Work Truck by private disposition unless Plaintiff paid the entire debt.  *See* Exhibit D.

102.    This threat was unlawful because Defendants had not obtained relief from the automatic stay to repossess or sell the Work Truck.

103.    The bankruptcy disclaimer in the notice of sale does not exonerate Defendants, because Defendants subsequently sold the Work Truck by private sale on October 19, 2022, thereby committed the very illegal act that it previously threatened to do.

104.    This threat is also a violation of TDCA § 392.301(a)(8), which states that a debt collector may not threaten to take an action prohibited by law.

105.    The automatic stay provisions of the Bankruptcy Code prohibit the sale of collateral without an order from this Court lifting the stay for that purpose.

106.    These acts were for purposes of debt collection because Defendants applied the proceeds from the illegal sale of the Work Truck to the alleged debt owing to them by Plaintiff, as expressly calculated in the Explanation of Calculation of Surplus or Deficiency at Exhibit H.

107.    Defendants did not have a statutory or contractual right to exercise non-judicial foreclosure, as contemplated under the "exception" in §392.301(b)(3), at the time it threatened the sale of the Work Truck because the automatic stay was in effect at the time Defendants made the threat.

108.    Defendants have also violated §392.304(a)(19) of the TDCA by using false representations or deceptive means to collect a debt.  Specifically, Defendants represented to Plaintiff that they had placed the sale of the Work Truck on "hold," and that they would not sell the Work Truck until counsel for Defendants and counsel for Plaintiff discussed payment of the debt obligations going forward (presumably through the Plan).

109.    As a direct and proximate cause of Defendants' violations of the TDCA, Plaintiff has been damaged as described herein, including economic damages.  Specifically for damages incurred relating to Defendants taking action prohibited by law in connection with the sale of the Work Truck, Plaintiff has suffered the loss of the Work Truck, as well as emotional distress relating to same.

110.    Plaintiff's actual damages include loss of the Work Truck, lost profits/income, lost opportunity cost, out-of-pocket expenses, non-litigation attorney fees and expenses relating

to attempts by Plaintiff's bankruptcy counsel to demand return of the Work Truck, and emotional distress damages.

111.    In addition, Plaintiff did not immediately seek an injunction from this Court prohibiting Defendants from selling the Work Truck because she relied on Defendants' representation that they had placed the sale of the vehicle on hold pending resolution of these matters.

112.    Defendants have willfully, maliciously and egregiously violated the TDCA and Plaintiff is entitled to economic and non-economic damages, as well as exemplary damages and reasonable attorneys' fees.  TDCA § 392.403.

## COUNT III
## GROSS NEGLIGENCE

113.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

114.    Defendants breached their duty to exercise reasonable care in avoiding foreseeable injury to Plaintiff by failing to return the Work Truck and by selling same in violation of the automatic stay.

115.    NCP also breached this duty by failing to properly supervise the actions of its servicer TitleMax in servicing Plaintiff's loan account.

116.    Plaintiff was damaged as a result of Defendants' breach of this duty. Plaintiff has suffered actual damages as described herein, including loss of the Work Truck, lost profits/income, attorneys' fees, and out-of-pocket expenses, amongst others, and she has suffered mentally and emotionally as a result of Defendants' breach of the duty to exercise reasonable care to avoid a foreseeable injury to the borrower.

117.    Defendants' failure to comply with the automatic stay objectively involved an

extreme degree of risk and a high probability of substantial financial and emotional harm to Plaintiff.

118.    Defendants were aware of the risks involved with regard to these actions and proceeded with conscious indifference to Plaintiff's rights and welfare, even after receiving notice of the bankruptcy filing/automatic stay from Plaintiff, her counsel, and the Bankruptcy Court.

119.    Plaintiff seeks to recover her general damages related to Defendants' gross negligence, as well as exemplary damages.

120.    Plaintiff is entitled to actual damages, exemplary damages, and her reasonable attorneys' fees and costs for Defendants' gross negligence.

**COUNT IV**
**REQUEST FOR ACTUAL AND PUNITIVE DAMAGES**

121.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

122.    Defendants violated the automatic stay provisions of the Bankruptcy Code.

123.    Plaintiff seeks imposition of all available damages, penalties, sanctions, punitive damages and attorneys' fees pursuant to the Court's inherent powers, 11 U.S.C. §§ 105(a), and also pursuant to 362(k), in an amount sufficient to compensate Plaintiff and deter Defendants from future misconduct.

**COUNT V**
**REQUEST FOR ATTORNEYS' FEES**

124.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

125.    Defendants' violations as set forth above can be remedied pursuant to the Court's

inherent powers, 11 U.S.C. §§ 105, and 362(k).

126.    Plaintiff has been forced to retain legal counsel and has incurred reasonable and necessary attorneys' fees to bring this motion to obtain actual damages, punitive damages, and injunctive relief.  Such fees are properly taxed against Defendants by virtue of their violations of the United States Bankruptcy Code, and it abuse of the Chapter 13 bankruptcy process, which should ensure a debtor a fresh start.

127.    Plaintiff is entitled to attorneys' fees pursuant to the Court's inherent powers, 11 U.S.C. § 105 and 11 U.S.C. § 362(k).

## VI.  DEMAND FOR JURY TRIAL

128.    Plaintiff requests a jury trial for any and all counts contained herein for which a trial by jury is permitted by law.

## VII.  PRAYER

WHEREFORE, Plaintiff requests that this Court grant the relief as requested herein in favor of Plaintiff by:

a) Awarding Plaintiff actual damages, including attorneys' fees and costs, and punitive damages for Defendant's violation of 11 U.S.C. §§ 362(a)(3)-(6);

b) Awarding Plaintiff her economic and non-economic damages, as well as exemplary damages and reasonable attorneys' fees under TDCA § 392.403;

c) Awarding Plaintiff actual damages, exemplary damages, and her reasonable attorneys' fees and costs for Defendants' gross negligence;

d) Awarding Plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and costs, pursuant to 11 U.S.C. § 362(a) and the Court's § 105(a) powers; and

e) Awarding such other relief as this Court may deem just and proper.

Dated: July 7, 2023.

Respectfully submitted,

KELLETT BARTHOLOW P.C.

/s/ *Claude D. Smith*
Theodore O. Bartholow, III
Texas Bar No. 24062602
Karen L. Kellett
Texas Bar No. 11199520
Claude D. Smith
Texas Bar No.  24028778
11300 N. Central Expy., Ste. 301
Dallas, Texas 75243
Tel: (214) 696-9000
Fax: (214) 696-9001
claude@kblawtx.com

***COUNSEL FOR THE PLAINTIFF***